UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MATT MASON, *et al.*, | ) | Case No.: 1:18 CV 2968 |
| | ) | |
| Plaintiffs | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| ANDREW EDDY, *et al.*, | ) | |
| | ) | MEMORANDUM OPINION |
| Defendants | ) | AND ORDER |

## I. INTRODUCTION

Plaintiffs Matt Mason, Jeffrey D. Mann, Edward McMillen, Robert Fleischer, and Kenneth Waybright are prisoners in the custody of the Ohio Department of Rehabilitation and Correction ("ODRC"). They bring this action pursuant to 42 U.S.C. § 1983, alleging that defendants have violated their constitutional rights under the Eighth Amendment. (Compl., ECF No. 1).

For the reasons that follow, this action is dismissed. Plaintiffs' motion to certify claims as a class action (ECF No. 7), motion to appoint class counsel (ECF No. 6), motion for service of summons (ECF No. 11), and motion for judgment on the motion for service of summons (ECF No. 12) are moot, and denied as such. Fleischer's motion for a preliminary injunction (ECF No. 13) is denied.

## II. BACKGROUND

Plaintiffs Mason, Mann, McMillen, and Fleischer are confined at the Grafton Correctional Institution ("GCI"). Plaintiff Waybright is confined and the Allen Correctional Institution ("ACI"). All Plaintiffs allege that various defendants were deliberately indifferent to their serious medical needs in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Plaintiffs describe the seventeen defendants as follows: (1) Andrew Eddy, Chairman of the ODRC medical review committee which makes determinations concerning the health care provided to ODRC prisoners (Compl. ¶ 4); (2) Mona Parks, Chief Medical Officer for the ODRC and member of the ODRC medical review committee which makes determinations concerning the health care provided to ODRC prisoners (*id*. ¶ 5); (3) LaShann Eppinger, Warden GCI, who allegedly inserted himself into the denial of medical care of one or more Plaintiffs (*id*. ¶ 6); (4) David Hannah, GCI health care administrator, responsible for overseeing the provision of healthcare to GCI prisoners and allegedly personally responsible for the delay or denial of healthcare to Plaintiffs (*id*. ¶ 7); (5) Todd Houghlen, chief medical officer and primary care physician at GCI (later transferred to Lorain Correctional Institution) who allegedly denied or delayed medical care to Plaintiffs (*id*. ¶ 8); (6) Janice Douglas, chief medical officer and primary care physician at GCI, who allegedly denied or delayed medical care to Plaintiffs (*id*. ¶ 9); (7) Nurse Mitchell, GCI pharmacy nurse responsible for issuing prescribed medications to Plaintiffs (*id*. ¶ 10); (8) Linda Hancock, GCI nurse practitioner (*id*. ¶ 11); (9) Katharine Beltz, GCI nurse practitioner (*id*. ¶ 12); (10) GCI nurse practitioner Ajuko (*id*. ¶ 13); (11) Chief medical officer and primary care physician who allegedly denied or delayed medical care to prisoners at ACI (*id*. ¶ 14); (12) Unknown nurses who provided healthcare to prisoners at ACI (*id*. ¶ 15); (13) Llyod Brownlee, GCI Inspector of Institutional Services responsible

for investigating institutional services and compliance with federal and state statutes and codes (*id.* ¶ 16); (14) Tina Costello (nee Grudzien), GCI Inspector of Institutional Services responsible for investigating institutional services and compliance with federal and state statutes and codes (later transferred to Lorain Correctional Institution) (*id.* ¶ 17); (15) Karen Stanforth, ODRC Assistant Chief Inspector responsible for investigation of alleged violations of state and federal laws and codes (*id.* ¶ 18); (16) Gary C. Mohr, Director ODRC responsible for oversight of the ODRC and ensuring compliance with federal state laws and codes, including the provision of adequate medical care (*id.* ¶ 19); and (17) Unknown ODRC and contract health care employees who committed any act that contributed to the delay or denial of medial treatment to any Ohio prisoner (*id.* ¶ 20).

Plaintiffs allege that named and unnamed defendants are deliberately indifferent to their respective serious medical needs, as well as the serious medical needs of "similarly situated"[1] Ohio prisoners, in violation of the Eighth Amendment's prohibition against cruel and unusual punishment (*id.* ¶¶ 116-121). In the Complaint, Plaintiffs refer to and attach the internal complaints, grievances, and appeals they filed in connection with the deliberate indifference claims asserted here. (*See* ECF No. 1-5). Plaintiffs' allegations are summarized below. The court will provide greater detail as appropriate in the analysis of each Plaintiffs' claims.

---

[1]  Plaintiffs allege that they are representative of a "class of prisoners" in ODRC custody who have been "delayed or denied adequate diagnosis and/or treatment for medical problems" by both named and unnamed defendants. (*See* Compl. ¶¶ 103-115). However, "[i]t is well-established that plaintiff ... may only represent himself with respect to his individual claims, and may not act on behalf of other prisoners." *Proctor v. Applegate*, No. 07-12414, 2008 WL 2478331, at *1 n.3 (E.D. Mich. June 16, 2008) (collecting cases). To the extent that Plaintiffs are asserting claims on behalf of prisoners other than themselves, those claims are dismissed.

### Mason

Plaintiff Mason asserts claims against Hancock, Hannah, Costello, and Stanforth. Mason states he was prescribed Lisinopril high blood pressure medication by Houghlen and Douglas. He alleges that around August 24, 2017, Hancock discontinued the Lisinopril, noting in his file that someone should let him know of the medication change. Mason claims he was not told of the medication change and did not learn of it until September 2017, when his refill for Lisinopril was declined. Plaintiff filed an internal complaint on October 2, 2017, which he escalated to a grievance, then an appeal. Hannah, Costello, and Stanforth, respectively, investigated and responded Mason's claims regarding the discontinuation of Lisinopril. Mason claims their responses that he was told of the medication change (which was made because Lisinopril could not be taken with Motrin), and that he received the substitute medication (Norvasc) on August 29, 2017, are false. That said, Mason acknowledges that he received what he characterizes as an "unknown drug" on October 24, 2017, but states that he did not take the medication until he met with Beltz in December 2017. Mason alleges that during this period, he was deprived of high blood pressure medication in violation of the Eighth Amendment, which resulted in a myocardial infarction. (Compl. ¶¶ 34-40; ECF No. 1-5 at 1-2).

### Mann

Plaintiff Mann asserts claims against Mitchell, Hannah, Brownlee, and Stanforth. Mann alleges that Beltz prescribed six medications for him, but when he went to pick up those medications on May 24, 2018, Mitchell did not provide all six medications and issued two medications that were discontinued. Mann states that when he tried to talk with Mitchell about the dispensing errors, she was rude and dismissive. Mann filed an informal complaint, grievance and appeal. In the

complaint, Mann states that Mitchell's error was a "simple oversight" and that he will "get the correct meds soon" but Mitchell's behavior and attitude was unacceptable and she should be instructed "to use more caution" in dispensing medication. (ECF No. 1-5 at 4). Mann claims that when Douglas rewrote his prescriptions to clear up any confusion, Mitchell still provided only five of the six, claiming that the doctor had not ordered his arthritis pain medication, which Mann states was false and Mitchell's failure to fill the prescription was retaliatory. (*Id.* at 9 ("Ms. Mitchell [cannot] be allowed to pick and choose which prescriptions she fills or does not fill. I am not the only person [whose] medication has been delayed/[withheld].")). According to Mann, Hannah, Brownlee, and Stanforth did not fully investigate or adequately respond to his complaint, grievance, or appeal, and their statement that the doctor did not order pain medication until July 17, 2018, which is why Mann did not receive the medication until July 19, 2018, is false. Mann claims that Mitchell, Brownlee, Hannah, and Stanforth's conduct with respect to his prescription medications constitutes deliberate indifference to his serious medical needs. (*See* Compl. ¶¶ 49-60; ECF No. 1-5 at 4-9).

### *McMillan*

Plaintiff McMillan asserts his claims against Houghlen, Douglas, Hannah, Eddy, Parks, and Mohr. McMillan alleges that he has a chronic knee problem, which he describes as severe and debilitating. He claims that he has "repeatedly" sought appropriate medical care from Houghlen, Douglas and Hannah. Douglas performed an X-ray of his knee, diagnosed him with mild arthritis and prescribed Mobic and a knee brace. Douglas concluded that based upon the X-ray, an orthopedic consult was not warranted. McMillan requested an MRI, but Douglas responded that "protocols" do not provide for the requested testing. McMillan asserts that Eddy, Parks, and Mohr,

are "presumably" responsible for such protocols. McMillan insists that he has not been properly tested and diagnosed because of protocols in place to control costs, and that failure to perform an MRI to properly diagnosis his knee based upon cost constitutes deliberate indifference to his serious medical needs. (Compl. ¶¶ 61-66; ECF No. 1-5 at 10-11).

### *Fleischer*

Plaintiff Fleischer asserts claim against Douglas, Hannah, Adams, Ajuko, Brownlee, Eppinger, and Stanforth. Fleischer claims that he suffers from multiple serious medical conditions, and his deliberate indifference claims relate to: (1) dental care, (2) hypoallergenic soap, (3) infection care, and (4) HIV medication. With respect to the first, Fleischer states that all of his teeth have been removed and he cannot properly chew his food, and that he has been on a waiting list for dentures more than a year, constituting deliberate indifference to his serious medical need.

As to the soap, Fleischer contends that he had a lifetime prescription for hypoallergenic soap which allegedly "expired" and Hannah "grudgingly" provided him with six bars, but no more was provided thereafter due to cost. Fleischer alleges that he is allergic to all of the soaps in the commissary, which cause him to experience skin outbreaks and infections, and Hannah's refusal to provide the hypoallergenic soap due to cost constitutes deliberate indifference to his health.

Fleischer's claim regarding infection care has three components. The first relates to a spider that became infected in April 2018. Fleischer was seen by Douglas who "handed him a few antibiotics." When the infection progressed, Fleischer was taken to the hospital for intravenous antibiotic therapy. Fleischer claims that Douglas was deliberately indifferent with respect to her initial examination and treatment of his spider bite. Then, Fleischer contracted an ear infection in September 2018 and was seen by Ajuko. Ajuko prescribed eardrops for the infection and Fleischer

told Ajuko that he was allergic to the medication, but Ajuko told him to use the medication anyway. Plaintiff alleges that the medication caused swelling and pain in his ears and, when he saw Douglas a week later, she told him that the condition was not serious and gave him "a few antibiotics." Also in September 2018, Fleischer developed a secondary infection in his chin, which Fleischer states Douglas "ignored." A few days later on a Sunday, Fleischer "went to medical" but was "refused" examination and treatment. On Monday, he was sent to an outside hospital for treatment with IV antibiotics and surgery to remove infection from his chin bone.

With respect to the fourth deliberate indifference issue, Fleischer received a prescription for HIV medication by Doctor Stevens, an OSU doctor who is not a defendant in this case, due to Fleischer's allergic reaction to previously prescribed anti-viral drugs. Plaintiff claims that Beltz, Hannah, and Douglas refused to provide the prescribed drug on the basis of cost, leaving him without anti-viral medication.[2] That said, Fleischer acknowledges that Douglas prescribed anti-viral medication, but he refused to take the prescribed medication because of side effects. (ECF No. 1-5 at 14-15; ECF No. 13).

Fleischer alleges that when he complained internally regarding "this continuing and ongoing pattern" of deliberate indifference to his serious medical needs by delaying and denying "proper" diagnosis and treatment of medical issues, Eppinger "interposed himself" to respond that he was being "seen by medical as needed." Fleischer claims that Stanforth and Brownlee failed to investigate his complaint. (Compl. ¶¶ 67-88; ECF No. 1-5 at 12-17).

---

[2]   In addition to the allegations in the Complaint, Fleischer filed a motion for preliminary injunction asking this Court to compel immediate medical care. He claims that HIV drugs in the ODRC formulary cause him "horrific and debilitating side effects" and defendants will not provide him with a different anti-viral drug prescribed by Dr. Stevens "solely on the basis of cost." (ECF No. 13). But according to the motion, Defendants ultimately did provide Fleischer with the anti-viral medication that Dr. Stevens prescribed. (*Id.*).

### *Waybright*

Plaintiff Waybright asserts his claims against named and unnamed defendants, unknown nurses at ACI, ACI's chief medical officer and physician, and ODRC health care employees and contractors. Waybright alleges that he had abdominal pain early in 2016 and had to wait several weeks before being seen by the ACI Chronic Care Nurse Practitioner who discovered he had a "dangerously low" heart rate, whereupon Waybright was immediately transferred to St. Rita's hospital. At St. Rita's a urinary tract blockage was discovered and a urologist inserted a catheter and Plaintiff was transferred to OSU hospital where a pacemaker was installed. Plaintiff experienced problems with his catheter over the next year, and was transferred to St. Rita's multiple times to have his catheter replaced. Then in mid 2017, Dr. Smith at OSU ordered the catheter removed. Ultimately, Waybright needed the catheter reinstalled but ACI medical personnel were unable to do so, so he was transferred to St. Rita's to surgically install the catheter.

Plaintiff claims that the surgery was botched, causing permanent damage and requiring additional surgeries. Waybright claims that he was not initially properly diagnosed and treated, which has resulted in pain, suffering, and lifelong complications. (Compl. ¶¶ 89-102; ECF No. 1-5 at 18-30).

### *Relief sought by Plaintiffs*

For relief, Plaintiffs seek a declaration that the practices and policies of named an unnamed defendants regarding the provision of medical care to Ohio prisoners are constitutionally inadequate and demonstrate deliberate indifference to Ohio prisoners' medical needs in violation of the Eighth Amendment's prohibition of cruel and unusual punishment. Plaintiffs further seek injunction relief requiring the provision of constitutionally adequate medical care, and a recommendation by this

Court to the United States Attorney for initiation of a criminal investigation regarding the failure to provide constitutionally adequate medical care. Lastly, Plaintiffs seek compensatory damages in the amount of Twelve Million Dollars. (*See* Compl. at 22-23).

## III. LAW AND ANALYSIS

### A. Standard of Review

Because Plaintiffs are *pro se*, the Court must liberally construe the Complaint. *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). That said, *pro se* litigants are not exempted or excused from the Federal Rules governing pleading or from dismissal for failure to state a claim. *Moore v. Holbrook*, 2 F.3d 697, 705 (6th Cir. 1993). Federal district courts are expressly required under 28 U.S.C. § 1915(e)(2)(B) to screen all *in forma pauperis* actions and to dismiss any such action that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. The standard for dismissal articulated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) with respect to Fed. R. Civ. P. 12(b)(6) also governs dismissal under § 1915(e)(2)(B). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). Therefore, in order to survive scrutiny under § 1915(e)(2)(B), a *pro se* complaint must set forth sufficient factual matter, accepted as true, to state a plausible claim for relief. *Anson v. Corr. Corp. of Am.*, 529 F. App'x 558, 559 (6th Cir. 2013) ("Section 1915(e)(2)(B) authorizes dismissal if the action fails to state a plausible claim for relief or is frivolous.").

When determining whether Plaintiffs have stated a plausible claim upon which relief can be granted, the court must construe the complaint in the light most favorable to the Plaintiffs, accept all factual allegations as true, and determine whether the Complaint contains "enough facts to state

a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* at 555. The court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal citations omitted). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 897 (S.D. Ohio 2013) (internal quotation marks and citations omitted).

## B. Section 1983 Claim for Deliberate Indifference to a Serious Medical Need

In order to state a claim under 42 U.S.C. § 1983, Plaintiffs must allege that a person acting under color of state law deprived him of his rights, privileges, or immunities secured by the Constitution or the laws of the United States. *West v. Atkins,* 487 U.S. 42, 48 (1988). In this action, Plaintiffs allege that Defendants were deliberately indifferent to their serious medical needs in violation of their rights under the Eighth Amendment.

The Eighth Amendment's prohibition against cruel and unusual punishment proscribes punishment that is incompatible with "'the evolving standards of decency that mark the progress of a maturing society'" and, under that standard, obligates the government to provide medical care for incarcerated prisoners. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)). The government runs afoul of the Eighth Amendment with respect to inmate medical care when it is deliberately indifferent to a prisoner's serious medical needs. *Id.* at 105-06.

In order to prevail on a deliberate indifference claim, Plaintiffs must establish two prongs consisting of an objective component and a subjective component, both of which must be satisfied.

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires the existence of a "sufficiently serious" medical need. *Id*. That is, "the inmate must show that he is incarcerated under conditions posing a substantial risk of harm." *Id*. (citation omitted).

The subjective component requires an inmate to show that prison officials have a sufficiently culpable state of mind in denying him medical care. *Id*. In order to satisfy this culpable state of mind, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. "To satisfy the subjective component, the defendant must possess a 'sufficiently culpable state of mind,' rising above negligence or even gross negligence and being 'tantamount to intent to punish.'" *Broyles v. Corr. Med. Servs., Inc.*, 478 F. App'x 971, 975 (6th Cir. 2012) (quoting *Horn v. Madison Cty. Fiscal Court,* 22 F.3d 653, 660 (6th Cir. 1994)); *Cobbs v. Pramstaller*, 475 F. App'x 575, 580 (6th Cir. 2012) (To establish subjective culpability, Plaintiff must plausibly allege that Defendants' conduct constituted a "deliberateness tantamount to an intent to punish.") (quoting *Hicks v. Frey*, 992 F.2d 1450, 1455 (6th Cir. 1993) (further citation omitted)). The subjective component of an Eighth Amendment deliberate indifference claim "'is meant to prevent the constitutionalization of medical malpractice claims.'" *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 550 (6th Cir. 2009) (quoting *Comstock*, 273 F.3d at 703).

### C. Analysis

### Plaintiffs Fail to State a Plausible § 1983 Claim

Plaintiffs fail to state a plausible § 1983 claim that Defendants were deliberately indifferent to their serious medical needs[3] in violation of the Eighth Amendment for multiple reasons.

#### *Plaintiffs' generic claims against "named defendants" are dismissed*

All Plaintiffs raise their respective deliberate indifference claims against specific defendants and "named and unnamed" defendants. Plaintiffs generic claims against "named" defendants are insufficient to state a § 1983 claim for deliberate indifference upon which relief can be granted even under the liberal construction afforded to *pro se* plaintiffs. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) ("Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983."); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (affirming dismissal of complaint that did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of federal rights). Plaintiffs' generic claims against "named" defendants are dismissed pursuant to § 1915(e).

#### *Defendants Brownlee, Costello, and Stanforth are dismissed*

Plaintiffs allege that defendants Brownlee, Costello, and Stanforth are responsible for investigating and responding to institutional complaints, grievances, and appeals. (Compl. ¶¶ 16-18). Prison officials whose only role involves the "denial of administrative grievances and their

---

[3] The Court will assume for the purpose of this analysis that Plaintiffs satisfy the objective component of a deliberate indifference analysis – that their medical conditions constitute a serious medical need.

failure to remedy the alleged ... behavior" cannot be liable under § 1983. *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999); *see also Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984); *Hays v. Jefferson Cty.,* 668 F.2d 869, 874 (6th Cir. 1982).

All allegations against Brownlee, Costello, and Stanforth relate to Plaintiffs' disagreement with their responses to internal complaints, grievances, and appeals filed by Plaintiffs in connection with medical care. Accordingly, Plaintiffs' claims against Brownlee, Costello, and Stanforth are dismissed pursuant to § 1915(e) for failure to state a plausible § 1983 claim for violation of the Eighth Amendment.

### Defendants Hannah, Mohr, Eddy, and Parks are dismissed

Plaintiffs allege that Hannah is GCI's health care administrator responsible for "overseeing" all aspects of healthcare to GCI prisoners. (Compl. ¶ 7). Plaintiffs describe Eddy as the Chairman of an ORDC medical review committee that makes decisions concerning the provision of health care to Ohio prisoners. (*Id*. ¶ 4). Parks is described as the Chief Medical Officer of ODRC and a member of the above-described medical review committee. (*Id*. ¶ 5). Plaintiffs state that Mohr is the director of the ODRC responsible for ensuring the provision of adequate healthcare to Ohio prisoners. (*Id*. ¶ 19).

To the extent that Plaintiffs are attempting to assert § 1983 supervisory liability claims against Hannah, Mohr, Parks, and Eddy based upon their position in the prisoner health care decision-making process, they fail to do so. In *Hays*, the Sixth Circuit held that in order to be liable under § 1983, a supervisor must at least implicitly authorize, approve, or knowingly acquiesce in the unconstitutional conduct. A failure to supervise, control or train an individual is not actionable "unless the supervisor 'either encouraged the specific incident of misconduct or in some other way

directly participated in it.'" *Shehee,* 199 F.3d at 300 (quoting *Hays*, 668 F.3d at 874)). A supervisor cannot be held liable under § 1983 simply based upon the theory of *respondeat superior. Browning v. Pennerton,* 633 F. Supp. 2d 415, 431 (E.D. Ky. 2009) (§ 1983 liability must be based upon more than a right to control employees or a failure to act) (citation omitted). Liability under § 1983 must be based upon active unconstitutional behavior. *Shehee,* 199 F.3d at 300 (citation omitted). Plaintiffs' claims against Hannah, Mohr, Parks, and Eddy based solely based upon the theory of *respondeat superior* are dismissed pursuant to § 1915(e) for failure to state a plausible § 1983 claim.

The only specific allegations in the Complaint against Hannah relate to: (1) his response to complaints, grievances, and appeals concerning healthcare (Compl. ¶¶ 38, 53, 60, 62); (2) McMillan's claim that he has "repeatedly sought appropriate medical care from" from Hannah regarding diagnosis and treatment of his knee (*Id.* ¶ 62); and (3) Fleischer's claim that Hannah deprived him of anti-viral medication and hypoallergenic soap. (*Id.* ¶¶ 73, 75, 76). For the same reasons as discussed above, Hannah cannot be liable under § 1983 for his role in denying Plaintiffs' complaints, grievances, or appeals. *Shehee,* 199 F.3d at 300. And for the reasons discussed later herein, McMillan's and Fleischer's allegations against Hannah fail to state a plausible § 1983 claim for violation of the Eighth Amendment.

With respect to Mohr, Eddy, and Parks, the only allegation in the Complaint asserted against them is made by McMillen, who alleges that they "presumably" put protocols in place which do not provide for diagnostic testing "such as the requested MRI." (Compl. ¶ 63). This single speculative allegation against Mohr, Parks, and Eddy is insufficient to establish active unconstitutional conduct by any of the three.

For these reasons, Plaintiffs' claims against Hannah, Mohr, Eddy, and Parks are dismissed

pursuant to § 1915(e).

### *Defendant Eppinger is dismissed*

Plaintiffs allege that Eppinger is the Warden at GCI and allegedly "inserted himself into the denial of medical care to one or more plaintiffs, taking personal action to interfere with the provision of prescribed medical care to one or more plaintiffs." (Compl. ¶ 6). The only specific allegation against Eppinger is asserted by Fleischer regarding Eppinger's role in responding to an internal complaint Fleischer filed about his medical care. (*Id*. ¶ 86; ECF No. 1-5 at 14). But Eppinger cannot be liable under § 1983 for his role in responding to Fleischer's grievance. *Shehee*, 199 F.3d at 300. No other specific allegations are asserted against Eppinger. To the extent Plaintiffs are attempting to assert a supervisory liability claim against Eppinger based upon his status as the GCI warden, they fail to do so. *See Browning*, 633 F. Supp. 2d at 431.

Plaintiffs fail to state a plausible § 1983 claim against Eppinger, and he is dismissed from this action pursuant to § 1915(e).

### *Mason fails to state a plausible § 1983 claim*

Mason was receiving treatment and medication for his high blood pressure from Houghlen and Douglas. Hancock changed his high blood pressure medication, and Mason's deliberate indifference claim revolves around his dissatisfaction with the communication of that change.

Mason discovered that his high blood pressure medication was changed in September 2017 when his refill of Lisinopril was declined. When Mason grieved the "denial" of his high blood pressure medication, Hannah advised on October 4, 2017 that the discontinued medication (Lisinopril) could not be taken with Motrin, and Norvasc was prescribed instead. According to the

grievance response, Mason received his prescription for Norvasc on August 29, 2017, but Mason disputes this, claiming that he did not receive an "unknown drug" until October 24, 2017.

Neither Hancock nor unnamed defendants were deliberately indifferent to Mason's high blood pressure in connection with the change of his medication from Lisinopril to Norvasc. Indeed, it is the opposite of deliberate indifference to monitor a prisoner's medications and change medications when potential drug interactions make it appropriate to do so. And Defendants did not deprive Fleischer of his medication. Even assuming the truth of his allegation that he did not receive the new medication until October, 2017, Mason chose to not take his high blood pressure medication until he met with Beltz in December. Plaintiff does not allege facts from which this court can infer that any defendant possessed a culpable state of mind regarding the claimed failure to communicate with him regarding the medication change, and any such communication delay constitutes negligence, at most.

Plaintiff does not claim that Hancock or any other prison official knew he was not taking his high blood pressure medication. Even if Hancock or other prison official were aware, there was no duty to force him to take the Norvasc. Regardless, failure to discharge any such duty constitutes nothing more than negligence. *See Cairns v. Malvasi*, No. 4:17-CV2215, 2019 WL 234353, at *5 (N.D. Ohio Jan. 16, 2019) (no duty to force prisoner to take medication and even if there were, failure to do so constitutes no more than negligence) (citing *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (noting that the Court in *Estelle* rejected "the constitutionalization of medical malpractice claims")).

Mason fails to allege a plausible § 1983 claim that he was deprived of his high blood pressure medication in deliberate indifference to his health. Mason's claims against Hancock (and unnamed defendants) are dismissed pursuant to § 1915(e).

### *Mann fails to state a plausible § 1983 claim*

Mann's deliberate indifference claim is based upon the allegation that Mitchell failed to fill certain prescriptions, issued certain discontinued prescriptions, and refused to issue his pain medication until it was ordered by the doctor. Plaintiff claims that his pain medication was ordered by the doctor, that Mitchell should "use more caution" in dispensing medication.

Even liberally construing the Complaint and assuming that all of Mann's factual allegations are true, Mann does not allege that Mitchell possessed a culpable state of mind when she dispensed the incorrect medications. Indeed, he characterizes the problem as a "simple oversight" and that he will "get the correct meds soon," which he did. Mann fails to allege facts from which this court an infer that Mitchell's dispensing errors were anything more than medical negligence. *Winfree v. S. Health Partners*, No. 3:14-CV-01269, 2014 WL 3015373, at *2 (M.D. Tenn. July 2, 2014) (Although the plaintiff could potentially have a state-law negligence claim against the nurse herself who dispensed incorrect medication, allegations of negligence do not state a claim under § 1983.) (citation omitted); *Wicker v. Lawless*, 278 F. Supp. 3d 989, 1006 (S.D. Ohio 2017) ("A defendant who negligently dispenses the wrong medication does not violate 42 U.S.C. § 1983.") (citation omitted). Accordingly, Mann fails to state a plausible § 1983 deliberate indifference claim with respect to incorrectly dispensed medications.

Mann also claims in conclusory fashion that Mitchell refused to dispense his arthritis pain medication until it was ordered by the doctor in retaliation for filing a grievance against her regarding the above-referenced dispensing errors. Such a conclusory allegation of retaliatory conduct, without specific factual allegations, fails to state a plausible claim upon which relief can be granted. *See Iqbal*, 556 U.S at 678.

Mann fails to state a plausible § 1983 Eighth Amendment claim against Mitchell (or any unnamed defendant), and is dismissed pursuant to § 1915(e).

### *McMillen fails to state a plausible § 1983 claim*

McMillen's § 1983 claim is grounded entirely in his disagreement with the diagnosis and treatment of his knee. He alleges that he "repeatedly sought appropriate medical care" for his knee from Houghlen, Douglas, and Hannah. Beyond this vague statement regarding Houghlen and Hannah, McMillen asserts no factual allegations regarding their personal involvement any unconstitutional conduct with respect to his knee which, if true, would permit this court to infer that he stated a plausible § 1983 claim against them for deliberate indifference. McMillan's claim against Houghlen and Hannah are dismissed pursuant to § 1915(e).

With respect to Douglas, she performed an X-ray on McMillen's knee, diagnosed him with arthritis, and prescribed a knee brace and non-steroidal anti-inflammatory medication. McMillen believes this is inadequate and an MRI should be performed.

"Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). McMillen states that he is still in pain and that more or better treatment may be

-19-

available to him. But it is well-established that a prisoner's disagreement with the level of testing or treatment he receives does not rise to the level of a constitutional violation. *Estelle*, 429 U.S. at 107 ("[T]he question of whether an x-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment."); *Dodson v. Wilkinson*, 304 F. App'x 434, 440 (6th Cir. 2008) (citations omitted); *see also Sprague v. Quilter*, No. 3:15 CV 2170, 2016 WL 790480, at *2 (N.D. Ohio Feb. 9, 2016) ("Disagreements between a prisoner and prison medical staff 'regarding the appropriate diagnosis and treatment are not enough to state a deliberate difference claim.'") (quoting *Ward v. Smith*, 100 F.3d 958, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996)). McMillan fails to state a plausible claim that Douglas was deliberately indifferent to his medical needs on the basis that he prefers different treatment, and his claim is dismissed pursuant to § 1915(e).

McMillen further alleges that his medical care is dictated by protocols which are driven by cost rather than the medical needs of the patients, constituting deliberate indifference. (Compl. ¶ 66). But a prison and prison doctor's consideration of cost, alone, is insufficient to state a claim for deliberate indifference. Prisoners do not have a constitutional right to limitless medical care. Indeed, the cost of treatment alternatives figure into medical-care decisions made by non-prisoners in our society. Resources are not infinite, and the Eighth Amendment does not require a prison to provide an inmate with the most sophisticated care available. *See Hendricks v. Kasich*, No. 2:12-CV-729, 2014 WL 2006800, at *11-12 (S.D. Ohio May 16, 2014) (collecting cases).

Moreover, protocols and policies taking cost into account and providing economic incentives to keep costs under control "simply lack[] the requisite subjective component" of an Eighth Amendment deliberate indifference claim, especially when a prisoner receives medical treatment, even if it is not the treatment he prefers. *Glatts v. Lockett,* No. 09-29, 2011 WL 772917, at *6-7 (W.D. Pa. Feb. 28, 2011). "[S]everal circuit courts have held that a mere claim that cost was taken into account in denying a prisoner's medical procedure does not per se establish the subjective component of an Eighth Amendment claim." *Casanova v. Michigan Dep't of Corr.*, No. 10-13950, 2011 WL 4374457, at *3 (E.D. Mich. Sept. 20, 2011) (collecting cases). In order to state a plausible claim that cost played a role in defendant's alleged deliberate indifference, plaintiff "must specifically assert that the defendant *knew* the alternative procedure was ineffective." *Id.* at *4 (emphasis in original) (citing *Kelley v. McGinnis*, 899 F.2d 612, 616 (7th Cir. 1990)). "Plaintiff's personal opinion that his care was substandard, or that he was not given the treatment he requested because of the costs associated with the treatment, raises claims of state-law medical malpractice, not constitutionally defective medical care indifferent to the plaintiff's serious medical needs." *Jennings v. Al-Dabagh*, 275 F. Supp. 2d 863, 871 (E.D. Mich. 2003), *aff'd,* 97 F. App'x 548 (6th Cir. 2004).

Here, McMillen's cost-driven deliberate indifference allegation is speculative, at best. He simply claims that "upon knowledge and belief" defendants refused to "provide appropriate diagnostic testing" due to "protocols," which he claims is actually "due to the cost of the testing." (Compl. ¶ 66). Nor does McMillen allege that Douglas *knew* the testing and treatment she provided was less was less effective than the MRI McMillen desired. McMillen's deliberate indifference claim is subject to dismissal pursuant to § 1915(e) for this additional reason, and McMillan's claims

against Douglas (and unnamed defendants) are dismissed.

### *Fleischer fails to state a plausible § 1983 claim*

### *Dental care*

Fleischer's deliberate indifference claim with respect to the length of time he has been on a waiting list for dentures is asserted against GCI's dental department, medical staff, named and unnamed defendants. For reasons already discussed, asserting a generic claim against unspecified defendants is insufficient to state a § 1983 claim and is dismissed pursuant to § 1915(e). Moreover, Fleischer's factual allegations regarding his dental care fail to state a plausible claim for deliberate indifference. While Fleischer indicates that he has difficulty chewing his food causing "digestive problems," and has been on a soft diet while waiting for his dentures (ECF No. 1-5 at 12), he does not allege that he is experiencing severe symptoms or requires emergency care with respect to his need for dentures. In the absence of any such allegation, Fleischer's placement "on the ordinary list for dentures" does not constitute deliberate indifference to his medical needs. *Harter v. Davis*, No. 06-13657, 2008 WL 786742, at *8 (E.D. Mich. Mar. 24, 2008) (collecting cases); *see also Rouse v. Caruso*, No. 2:06-CV-10961, 2014 WL 7877155, at *11 (E.D. Mich. Aug. 5, 2014) ("To be sure, a number of courts have found that a delay in providing dentures or other dental care may implicate a serious medical need; in each of those cases, however, the prisoner alleged that the delay in or denial of treatment caused other severe symptoms, such as headaches, disfigurement, bleeding, severe pain, and loss of weight.") (collecting cases), *report and recommendation adopted,* No. 06-CV-10961, 2015 WL 632025 (E.D. Mich. Feb. 13, 2015). Fleischer's § 1983 deliberate indifference claim with respect to his dental care is subject to dismissal pursuant to § 1915(e) for this additional reason.

### *Hypoallergenic soap*

Fleischer also fails to state a § 1983 claim that Hannah (and unnamed defendants) was deliberately indifferent to a serious medical need by depriving him of hypoallergenic soap on the basis of cost. When Fleischer's hypoallergenic soap prescription "expired," Hannah ordered Fleischer to be provided with six bars of soap, and Fleischer was told "to make it last all year." (ECF No. 1-5 at 14). Hannah indicated that the hypoallergenic soap was discontinued because the commissary sells similar soap with the same ingredients. (ECF No. 1-5 at 15). Fleischer disagrees that his soap prescription "expired" or that the soap in the commissary is equivalent, and alleges that without the hypoallergenic soap he has experienced skin outbreaks and infections.

Liberally construing and assuming the truth of Fleischer's allegations, he fails to state a plausible § 1983 claim that Hannah was deliberately indifferent with respect to the hypollergenic soap because he has not alleged facts which suggest that Hannah possessed a culpable state of mind in refusing to provide the hypoallergenic soap necessary to establish the subjective component of a deliberate indifference claim. Plaintiff does not allege that Hannah was both aware of facts from which he could have drawn an inference that Fleischer was at substantial risk of serious harm by using soap from the commissary, and drew that inference. *Farmer*, 511 U.S. at 837; *see also Glatts*, 2011 WL 772917, at *7 (policies regarding cost controls "lack the requisite subjective component so as to state and Eighth Amendment claim of deliberate indifference[.]"); *Casanova*, 2011 WL 4374457, at *4 ("In order to state a plausible claim that cost played a role in defendant's alleged deliberate indifference, plaintiff must specifically assert that the defendant *knew* the alternative procedure was ineffective.") (internal quotation marks and citation omitted).

Fleischer's § 1983 deliberate indifference claim against Hannah (and unnamed defendants) with respect to hypoallergenic soap is dismissed pursuant to § 1915(e).

### *Infection care*

Fleischer's claims that Douglas and Ajuko were deliberately indifferent to the care of his spider bite and ear infection fails to state a plausible § 1983 claim. Fleischer states that he was treated in both cases by Douglas and Ajuko with antibiotics and eardrops, but alleges the treatment was inadequate. While allegations of inadequate or ineffective treatment may support a claim for negligence or medical malpractice, such claims do not constitute a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 106-07); *Westlake*, 537 F.3d at 860 n.5. With respect to his chin infection, Fleischer's conclusory allegation that Douglas "ignored" the infection, and he was "refused" treatment by GCI medical staff over the weekend before he was transferred to the hospital for treatment on Monday is devoid of any supporting factual allegationd, and insufficient to state a plausible § 1983 that Douglas (or any unnamed defendant) was deliberately indifferent to his chin infection. *See Hartman v. Pickney*, No. 1: 18 CV 1060, 2018 WL 4305218, at *3 (N.D. Ohio Sept. 10, 2018) (prisoner's conclusory allegation that defendant "ignored" his medical needs is insufficient to support a plausible inference that the defendant had the requisite subjective state of mind to demonstrate deliberate indifference).

Fleischer's § 1983 deliberate indifference claims against Douglas and Ajuko (and unnamed defendants) with respect to infection care are dismissed pursuant to § 1915(e).

### *Anti-viral medication*

Because Fleisher's complaint and motion for preliminary injunction deal with overlapping facts and claim that he is being deprived of anti-viral medication to treat his HIV infection, the court

will address both together. According to the Complaint, Fleischer was prescribed anti-viral drugs while at Grafton Correctional, but those drugs caused side effects and he stopped taking the medication. When Dr. Stevens at OSU prescribed a different drug, Fleischer claims that Beltz, Hannah, and Douglas initially refused to provide the medication on the basis of cost, but ultimately did so. (*See* Compl. ¶ 73; ECF No. 13). When Fleischer experienced side effects from Stevens' prescription, he stopped taking the medication. Fleischer wants an appointment with Stevens, but Adams told Fleischer that Stevens requires Plaintiff to be taking the medication to be seen. Fleischer has refused to do so and states that "defendants" are providing him with antibiotics. (ECF No. 13). In both the Complaint and motion, Fleischer claims he is being "deprived" of anti-viral medication in deliberate indifference to his health. (Compl. ¶ 73; ECF No. 13).

The facts as alleged by Fleischer show that he was provided with at least two prescriptions for anti-viral drugs, both of which he stopped taking due to side effects. As an initial matter, the prescribing of drugs by a physician which causes side effects does not constitute deliberate indifference. *Walker v. Abdellatif*, No. 1:07CV1267, 2009 WL 579394, at *7 (W.D. Mich. Mar. 5, 2009) (doctor's choice to continue medication for Chron's disease even though medication may cause allergic reaction involved the exercise of the doctor's medical judgment and did not implicate a federal constitutional violation) (citing among authority *Smith v. Sator*, 102 F. App'x 907, 909 (6th Cir. 2004)); *Christensen v. United States*, No. CIV. 5:11-321-KKC, 2013 WL 4521040, at *4 (E.D. Ky. Aug. 26, 2013) ("[Doctor's] decision to continue [prisoner's] prescription for [aspirin] was evidently based upon her medical judgment that its benefits to his long-term cardiac health outweighed its detrimental side effects. Such balancing of competing goals is one of medical judgment, and is the antithesis of deliberate indifference to [prisoner's] medical care.") (citation

omitted). And while Douglas, Hannah, and Beltz allegedly initially declined to fill Stevens' prescrription because of cost, Fleischer was ultimately provided with the medication. (ECF No. 13). In any event, the consideration of cost by prison officials in providing medical care to prisoners does not, per se, constitute deliberate indifference. *See Casanova*, 2011 WL 4374457, at *3 (collecting cases).

Moreover, Fleischer cannot attempt to dictate the treatment he receives by refusing to take prescribed anti-viral medication and then claim that prison officials are deliberately indifferent because they failed to provide him with a different medication that he prefers, and his disagreement with the HIV treatment provided does not give rise to a constitutional claim for deliberate indifference. *See Kennedy v. Potter*, 344 F. App'x 987, 990 (5th Cir. 2009) (Prisoner's disagreement over the next steps in his medical treatment is not sufficient to establish deliberate indifference.); *see also Brown v. Kentucky State Penitentiary*, No. 5:10CV-P188-R, 2011 WL 1403201, at *2 (W.D. Ky. Apr. 13, 2011) ("Prisoners should not dictate the day-to-day operation of the prison, which, in this case, includes the prisoner's demand for particular physicians."). The same analysis applies to Dr. Stevens' requirement that Fleischer resume taking the medication before a "telemed." That decision is an exercise of Stevens' medical judgment concerning Plaintiff's HIV care, which the court will not second-guess. *Westlake*, 537 F.2d at 860 n.5; *Kennedy*, 344 F. App'x at 990 (5th Cir. 2009).

Here, Plaintiff is receiving treatment for HIV. Fleischer has not been deprived of anti-viral medication – he has refused to take the prescribed drugs due to side effects and "defendants" are providing him with antibiotics. Plaintiff's disagreement with the manner and method of his HIV treatment is insufficient to support a plausible § 1983 claim for deliberate indifference, and

Fleischer's claims against Douglas, Hannah, Beltz (Adams, and unnamed defendants) with respect to HIV treatment are dismissed pursuant to § 1915(e).

### Motion for preliminary injunction

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). When considering a motion for preliminary injunction the court considers four factors: (1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury without an injunction, (3) whether issuance of an injunction would cause substantial harm to others, and (4) whether the public interest would be served by the injunction. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (citation omitted). The court is not required to conduct an evidentiary hearing when the only issue, as here, is whether Plaintiff's factual allegations, taken as true, state a plausible claim for an Eighth Amendment violation upon which relief can be granted. *See id.* at 552-53 (citation omitted).

For the reasons discussed above, Plaintiff's motion fails on the first factor – likelihood of success on the merits. Since Fleischer has refused to take the anti-viral medication prescribed by Dr. Stevens, he is being provided with antibiotics. Plaintiff's disagreement his physician's order to take the HIV medication prescribed, notwithstanding side effects, is insufficient to establish a likelihood of success on the merits of his deliberate indifference claim. "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) (citing *Mich. State AFL-CIO v. Miller,* 103 F.3d 1240, 1249 (6th Cir. 1997)).

With respect to the second factor, "the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury the movant[ ] will suffer absent the stay." *Ne. Ohio Coal. for Homeless and Serv. Emp. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) (citing *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)). Fleischer asks this court to compel Dr. Stevens to see him without resuming the prescribed anti-viral medication (which Fleischer alleges that Dr. Stevens requires), "before the repeated infections kill him." (Doc. 13 at 2-3). Fleischer claims he needs immediate access to Stevens to "develop a treatment plan as no treatment is being provided at all at this time." But Plaintiffs allegations, taken by this court as true, undermine and belie his irreparable injury argument. Fleischer has chosen not to follow Dr. Stevens' treatment plan and defendants are providing him with antibiotics.

With respect to the public interest factor, in the absence of a constitutional violation "concepts of separation of powers and federalism strongly discourage federal courts from entangling themselves in the administration of prison health care systems." *Winn v. Waugaman*, No. 0:14-CV-169-HRW, 2015 WL 1606151, at *5 (E.D. Ky. Apr. 8, 2015) (declining to issue preliminary injunction ordering doctor to provide prescription pain medication that was discontinued in lieu of over-the-counter medication) (collecting cases).

In this case, the balance of factors weighs against issuing a preliminary injunction. Fleischer's motion for preliminary injunction is denied.

### *Waybright fails to state a plausible § 1983 claim*

Waybright fails to state a plausible § 1983 claim against any defendant, named or unnamed. His claims revolve around the treatment he received for urinary tract issues, but he does not attribute specific alleged unconstitutional conduct against any particular named or unnamed defendant. Even if Waybright's vague and general allegations were asserted any specific defendant, Waybright nevertheless fails to state a plausible § 1983 claim for deliberate indifference upon which relief can be granted.

Waybright claims his urinary tract issues were not adequately or properly treated at ACI, St. Rita's, or OSU, that the surgery to implant a catheter was botched, and that these failures have resulted in the need for additional surgeries and permanent injuries. These allegations amount to classic medical malpractice/negligence claims, and Waybright's status as a prisoner does not constitutionalize a medical malpractice or negligence claim. *Estelle*, 429 U.S at 105-06 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Comstock*, 273 F.3d at 703 ("When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation.").

Waybright's fails to state a plausible § 1983 claim for deliberate indifference in violation of the Eighth Amendment, and his claims are dismissed pursuant to § 1915(e).

### **Plaintiffs Fail to State a Plausible § 1983 Official Capacity Claim**

While it is not entirely clear whether Plaintiffs assert their claims against Defendants in their individual capacities, it is clear that their claims are asserted against Defendants in their official capacities. (Compl. ¶ 114). Official capacity suits "generally represent only another way of

pleading an action against an entity of which the officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (further citation omitted))).

For a defendant to be liable under § 1983, the defendant must be a "person" for the purpose of § 1983. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Nor is the ODRC, as an agency of the State of Ohio, a person subject to suit under § 1983. *See Regents of the Univ. of Calif. v. Doe*, 519 U.S. 425, 429 (1997) (applying Eleventh Amendment immunity to state agencies and instrumentalities); *Will*, 491 U.S. at 70-71 (a state agency is not a "person" subject to suit under § 1983).

Moreover, the Eleventh Amendment bars § 1983 actions against a State unless the State has waived its immunity or unless Congress exercised its power to override that immunity. *Id.* at 66; *Ernst v. Rising,* 427 F.3d 351, 358-59 (6th Cir. 2005) (states are immune from suit absent waiver of immunity or abrogation of immunity by Congress). In passing § 1983, Congress did not disturb the States' Eleventh Amendment immunity, and the State of Ohio has not waived its immunity from suit in federal court to § 1983 suits for money damages. *Will*, 491 U.S. at 66 (citation omitted); *Lee Testing & Eng'g, Inc. v. Ohio Dep't of Transp.*, 855 F. Supp. 2d 722, 726 (S.D. Ohio 2012) (citing *Turker v. Ohio Dep't. of Rehab. and Corr.,* 157 F.3d 453, 457 (6th Cir. 1998)).

As an initial matter, in the absence of an underlying constitutional violation, there can be no official capacity liability. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). For the reasons discussed above, Plaintiffs have failed to state a plausible constitutional violation against any Defendant.

Moreover, "[t]o establish liability in an official capacity suit under section 1983 a Plaintiff must show either that the official named in the suit took an action pursuant to an unconstitutional governmental policy or custom, or that the official possessed final authority over the subject matter at issue and used that authority in an unconstitutional manner." *Lupo v. Voinovich*, 235 F. Supp. 2d 782, 791 (S.D. Ohio 2002) (citing *Nix v. Norman,* 879 F.2d 429, 433 (8th Cir. 1989)). Plaintiffs fail to identify any such unconstitutional policy or custom. Plaintiffs generally allege that Defendants were deliberately indifferent to their serious medical needs because of policies and protocols which take the cost of diagnosis and treatment into consideration. But the allegations regarding any such policies and protocols are conclusory and speculative. "To show the existence of an offending custom or policy, plaintiffs must adduce specific facts supporting their claim; conclusory allegations are insufficient." *Van Hull v. Marriott Courtyard*, 87 F. Supp. 2d 771, 779 (N.D. Ohio 2000) (citing *Taylor v. Canton Police Dep't.,* 544 F.Supp. 783 (N.D. Ohio 1982)). This Plaintiffs fail to do. Moreover, policies or protocols that generally take the cost of healthcare into consideration are not per se unconstitutional. *Casanova*, 2011 WL 4374457, at *3(collecting cases). Accordingly, Plaintiffs fail to allege plausible § 1983 official capacity claims against Defendants, and those claims are dismissed.

## IV. CONCLUSION

For the foregoing reasons, this case is dismissed pursuant to § 1915(e)(2). The pending motions for appointment of counsel (ECF No. 6), certification of claims as a class action (ECF No. 7), to order service of summons (ECF No. 11), and for judgment on the motion to order service of summons (ECF No. 12) are moot and denied as such. Fleischer's motion for a preliminary junction (ECF No. 13) is denied.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[4]

IT IS SO ORDERED.


/s/ SOLOMON OLIVER, JR.
UNITED STATES DISTRICT JUDGE


August 9, 2019

---

[4] 28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.